## BALDWIN v. McCLINCH.

A person elected by a Methodist Society to be one of their local preachers, and ordained as a deacon of the Methodist Episcopal Church, is a *minister of the gospel* within the meaning of *Stat.* 1811. *c.* 6. § 4. though he have no authority to administer the sacrament of the communion.

It is sufficient if such minister be settled over any religious *society,* though it be composed of members resident in *several towns.*

It is not necessary that such society be under any legal obligation, as such, to pay him any fixed salary.

*Trespass* for taking and carrying away two cows, the property of the plaintiff. The defendant justified as collector of taxes for the town of *Fayette.*

It was admitted that the defendant was duly chosen and qualified as collector ; and that in the voting of the money by the town—its assessment on the inhabitants—the commitment of the tax-bill to the collector—and his proceedings in the distress and sale—the forms of law were regularly observed. It was also admitted that the plaintiff was an inhabitant of *Fayette* when the taxes were voted, assessed, and collected.

But the plaintiff claimed exemption from taxation, as being a settled ordained minister of the gospel; and proved that in *June* 1814, he was ordained in *Durham,* in the county of *Cumberland,* as a *deacon in the Methodist Episcopal Church, having the*

*right to administer all the ordinances except the Lord's supper :—* that previous to that time he had preached four years to the *Livermore society*, so called, by licence for that purpose, and with a view to ordination ; such previous licence and preaching being necessary for that purpose, according to the established rules of that church :—that he was recommended to the Bishop of the Methodist Episcopal Church for ordination, having before that time, been duly *elected by the Livermore society* as *one* of their *ministers*, or *local preachers ;* there being several other *ordained deacons* who had been in like manner elected as local preachers over the same society, and who administered the ordinances of religion to them by turns, according to the usages of that church.

It appeared that the members of the *Livermore* society considered the plaintiff as ordained and settled over *their society*, and bound to preach and officiate as such, *to them*, until he should be regularly dismissed :—that ever since his ordination he had continued to discharge the duties of a local preacher to that society ; and that they were *bound to regard him as such* in affairs of church discipline, and in religious meetings :—and that until he was regularly dismissed and recommended *by them,* he could not be admitted as a local preacher to any *other* society.

The plaintiff had no fixed salary, nor the possession of any temporalities of the church, it being the universal custom of the Methodist Episcopal Church to support their clergy by voluntary contributions.

The " *Livermore* society" was composed of persons living in *Livermore, Fayette* and some other adjacent towns ; but there had been no preaching in *Fayette* for some years, the members resident in that town having attended public worship in the neighboring towns.

Upon this evidence *Wilde J.* who presided at the trial of the cause, instructed the jury that the plaintiff must be regarded in law as a settled ordained minister : and a verdict was thereupon taken for the plaintiff, subject to the decision of the Court upon the correctness of that opinion.

*Bond,* for the defendant.

The Statute of 1811. *c.* 6. made no other alteration in the

Baldwin *v.* McClinch.

law applying to this case, than to place ministers of unincorporated societies on the same foundation with the ministers of regularly incorporated parishes, as to exemption from taxation. But to entitle themselves to this exemption they must now, as before, be ordained, and settled over a particular parish or society. *Ruggles v. Kimball*, 12 *Mass.* 337.

1. The plaintiff is not, within the meaning of the law, an *ordained* minister of the gospel. He has only limited powers, not being authorized to administer the sacraments. He has taken, as yet, but a *part* of the priestly office; the whole of which is exercised by clergy of a higher grade in the Methodist Church; and to *these* alone can the law apply.

2. But even if *ordained*, yet the plaintiff is not a *settled* minister, within the meaning of the law. He officiated, as a local preacher, in divers towns; but never preached in *Fayette*, the town in which he claims exemption. One principal ground of the exemption of a minister from the burden of public taxes, is, that the services he is supposed to render to the town in his clerical character are regarded as a fair equivalent. But it is absurd to suppose one man capable of rendering such equivalent to eleven towns; and yet over so many is the plaintiff *settled*, if settled at all. The clergy in this respect are to be classed with preceptors of academies and school-masters; and being exempted from taxes for the same reason, they ought to have a settlement as strictly local as those.

By *Stat.* 1799. *c.* 87. the town of *Fayette*, if of sufficient ability to support a protestant teacher of piety, is liable to an indictment, not having been supplied with any stated public ministry of religion within the town for several years. Upon this ground, therefore, the plaintiff cannot claim to be a settled minister; nor ought he, as such, to be exempt from paying taxes to a town which his ministerial character, whatever it may be, could not protect from indictment.

To constitute a settlement, there ought to be a contract of service and reward; or at least a legal right to the labours of the minister, vested in some society. But here is no legal obligation on the part of the plaintiff to officiate in any place, nor at any time. No society is entitled by law to his services, nor bound to pay him.

*Emmons*, in reply.

The *Stat.* 1811. *c.* 6. was the result of a strong excitement, felt in all parts of the Commonwealth; and its object was to place all denominations on a footing of perfect equality of privileges. It gives to ministers ordained at large, according to the usages of their own sect or communion, the same right of exemption as is given to ministers ordained over a particular town.

The first section of the Statute expressly recognizes as valid any ordination made in the forms of the sect, to which the party ordained may belong; even though the parochial charge extend to several religious societies. It regards the clerical character, rather than the extent of territory over which the minister may be called to preside. If he discharge the office of a clergyman, after the usages of his own sect, it is enough. It has been held that a person officiating as a reader in an Episcopal church, but not in orders, was a public teacher, within the constitution; *Sanger v. Inhabitants of the third parish in Roxbury*, 8 *Mass.* 265. *à fortiori* a person admitted a deacon of the Methodist Church, and having authority to preach, is to be regarded as *ordained*, within the meaning of the law.

The plaintiff is also a settled minister. He was elected by the *Livermore* society, was received by them as their stated pastor, and was bound to continue in that relation till regularly dismissed. If a contract for service or reward be necessary, here was one sufficiently explicit and binding;—a religious obligation voluntarily to furnish all needful support to their minister. Nor is it now requisite that he be settled over a particular town or society, the Statute of 1811 *c.* 6. *sec.* 4. having in this respect changed the law.

The ground of the exemption claimed is not merely the benefit conferred by the ministers of religion upon the people constantly attending upon their ministry; for this would entitle them to exemption from none but parish taxes; but it stands on the broader basis of public good; the whole community being deeply interested in the instruction of its members in the principles of virtue and religion.

[A doubt being suggested by the *Chief Justice* whether the Plaintiff had not misconceived his remedy, and whether trespass

would lie against the collector acting under a lawful warrant; the counsel agreed to waive that objection.]

MELLEN C. J.   The plaintiff claims an exemption from taxation in the town of *Fayette*, as an ordained minister of the gospel, within the meaning of the fourth section of the act of 1811. *c.* 6. At the trial of the cause he obtained a verdict for damages, under the instructions stated in the report of the Judge before whom the trial was had.   If those instructions were correct, judgment is to be entered on the verdict, otherwise it is to be set aside and a nonsuit entered.

The object, in part, which the legislature had in view, in enacting the law just mentioned, is expressed in the preamble, in the words of the Constitution.   Under the provisions of the Constitution, before the act of 1800. *c.* 87. was passed, it was the duty of assessors in the several towns to assess the polls and estate of all the inhabitants, with some exceptions distinctly stated; and those who were thus assessed, and were really of a different sect or denomination from the minister for whose support they were assessed, were compelled to pay the sums assessed on them, and then draw the same out of the treasury, into which it had been paid.   If repayment was refused, the teacher on whom the persons usually attended for religious instruction, could maintain an action against the town or parish, under whose authority the money had been assessed and collected.

With the view of avoiding this circuity of proceeding, and to enable those entitled *eventually* to exemption from taxation for the support of public worship, and public teachers, in any other religious corporation, to attain this exemption *at once*, and with as much facility as possible, the fifth section of that Statute was introduced.   Other reasons also had influence on the legislature which enacted the law of 1811. *c.* 6.—The Supreme Judicial Court had decided in the case of *Barnes v. the first parish in Falmouth*, 6 *Mass.* 401. that none but the teacher or minister of an *incorporated* religious society could maintain an action of the kind above stated, to recover the taxes assessed upon and collected from those who usually attended on his instructions. The legislature considered the constitution as not intending, by

the word *teacher,* to exclude teachers of religious societies not incorporated. It will be seen that the Statute of 1811 makes provision for those who are *hearers* as well as *teachers.* The first section provides that all monies paid by any citizen for the support of public worship, shall, if he require it, be applied to- wards the support of the teacher of his own sect or denomina- tion; whether he be a teacher of an incorporated or of an unin- corporated religious society; if ordained and established accord- ing to the forms and usages of his own sect or denomination, al- though his parochial charge or duties may extend over other religious societies according to such forms and usages. The second section provides that when any person shall become a member of any religious society, whether incorporated or not, such membership shall be certified by a committee, and filed with the Clerk of the town where he resides; and such certifi- cate shall exempt such person afterwards from *taxation* for the support of public worship in every other religious society. The third section authorizes unincorporated religious societies to take and hold and manage any property given or granted to them, and to sue for any right vesting in such society in virtue of such gift or grant. The fourth section, on which the plaintiff more particularly relies for the support of this action, provides that " all *ministers,* ordained agreeably to the usages of the sect " or denomination to which they severally belong, whether over " corporate or unincorporate society *or societies,* shall have the " same exemptions from taxation as are given to *stated* ordained " ministers of the gospel in the town or district, parish or plan- " tation, where they are settled; subject, however, to the same " restrictions and penalties."

It is contended in the *first* place, by the counsel for the de- fendant, that the plaintiff is not a minister of the gospel, within the meaning of the fourth section of the act; not having the power of administering *all* the ordinances. It appears that he was ordained in 1814 as a deacon in the Methodist Episcopal Church, over the *Livermore* society, having a right to adminis- ter all the ordinances except the Lord's supper;—and that he had the same powers as other ordained deacons, and preached and administered the ordinances according to the regulations of that Church. The Statute speaks of ministers ordained

according to the usages of the sect or denomination to which they belong; and grants the exemption to them, without any reference to their *powers*, except so far as is implied in a general reference to the usages peculiar to their sect or denomination. Besides, by comparing the first and fourth sections of the Statute, it would seem that the word "*teachers*" in the first, must be understood to mean the same as "*ministers*" in the fourth. In both sections they are only mentioned as *ordained*; and the whole act has an immediate relation to the constitution, which speaks of teachers of piety, religion, and morality. The first section gives certain exemptions to the hearers,—the fourth, to the teachers or ministers. We therefore consider this objection as no bar to the plaintiff's right of action.

In the *second* place it is objected that the plaintiff, though ordained, is not a settled minister; and of course not excepted from the operation of the general tax act. In reply it may be observed that although the tax act was passed since the Statute of 1811, we must presume that the legislature intended that the words used in the tax act should be understood in the manner in which they are used and understood in the act of 1811, when speaking of ministers exempted from taxation;—and not that they meant, in this dark and unusual manner, to change any of the provisions of the former general law.

But it is urged that he must be ordained and settled in a *particular parish*, to be entitled to the exemption claimed. It is true that by the Judge's report it appears that the plaintiff is ordained as minister or deacon over the *Livermore* society; that this society is composed of persons living in several contiguous towns; and that this society is not incorporated. But it further appears that the plaintiff was *elected* by this society as one of their ministers;—that he is considered as ordained and settled over it;—that he is so connected with its members, as that he is bound to preach to them, and administer the ordinances to them until he shall be regularly dismissed;—and that they are bound to regard him as their minister in affairs of discipline, and in their meetings and conferences.

But the argument of the defendant's counsel on this point is objectionable on another ground, as it goes to deny to the plaintiff a right given him in express terms by the act so often men-

Baldwin *v.* McClinch.

tioned. By that Statute his parochial charge may extend over *several* religious *societies*; *à fortiori* it may extend over *one* society, though composed of members residing in *several towns*; provided the minister be ordained agreeably to the forms and usages of his own denomination, as the plaintiff was in the present case. The Statute surely was designed to give new rights to ministers of this description.

But it is further contended that the question presented to us for decision, has already been settled by the Supreme Judicial Court of *Massachusetts* in the case of *Ruggles v. Kimball,* 12 *Mass.* 337. and this decision has been pressed upon us. Wherever that Court has decided a question, we are disposed to respect its authority. But we believe it will be found, on examination, that the case cited differs essentially from the case at bar. The facts in that case are very few and simple. *Ruggles,* in 1810, had been ordained a Baptist Elder, or Evangelist, according to the usual Baptist form;—that is—he had been ordained *at large,* and on Sundays and other occasions continued the practice of preaching at several places, but not constantly at any one place. Upon these facts the Court decided that he could not maintain his action; considering him as not coming within the provisions of the act of 1811. He had no connection with any society whatever, corporate or unincorporate; and until he should form such connection, although ordained, he could have no claim to exemption from the payment of taxes. The Court observed in that case, that a minister, to be entitled to the exemption, must be ordained over some particular society, incorporated or unincorporated; but they have not intimated that such a society should be composed of members all resident within the limits of any particular town or parish. Indeed, this Statute takes no notice of the usual division into towns and parishes; but establishes divisions of its own, called religious societies, corporate or unincorporate; but no limits affecting corporations existing at the time of passing the act seem to have been contemplated by the legislature. Numberless instances may be found in the Statutebook, where religious societies have been incorporated by *special* acts, and the members composing them belong to several towns; and it seems equally reasonable that under the Statute

of 1811, which operates as a kind of general act of incorporation, for certain purposes, of the unincorporated religious societies in the State, such societies may be formed and exist, though composed of inhabitants of different towns.

Another objection is made against the claim of the plaintiff, and the case of *Ruggles v. Kimball* is relied upon for its support. In that case the Chief Justice, in delivering the opinion of the Court says that a minister, to be entitled to the benefit of the Statute of 1811, must not only be ordained over a particular society, incorporated or unincorporated, but such society must be *obligated to him* for his support, in some form or other. We must suppose the Chief Justice intended a *legal obligation,* which could be enforced in a Court of law. It is clear *this point* was not necessarily before the Court. The other facts in the case authorized and required such a decision as was given on the main question; and we are disposed to consider the obligation to support the minister as not the point adjudged; because nothing in the case called for this opinion. Besides, the Statute is profoundly silent on this head; leaving the amount and mode of compensation, if any be required, to be adjusted by the parties to be affected by it. The first section declares that " it *shall be sufficient* to entitle any such teacher,—to receive "the monies which have been assessed,—that he has been " *ordained* and *established,*" &c. As the *Act* requires no more than *ordination* over a society according to usages, &c. to enable him to demand and receive sums which *,have been assessed* on those who attend on his instructions; why should *we* require any thing more to enable him or his hearers to claim an *exemption* from assessment?

We do not perceive how an *unincorporated society, as such,* can obligate themselves to their minister in such a manner as to create a legal liability on their part. The legislature must have known this principle; and the construction contended for by the counsel for the defendant would lead us to conclusions which they never contemplated.

It is true the members of the society might contract in their *individual* capacities; but as societies are continually changing their members, by additions, by removals, or by death, no compensation thus secured could be certain or permanent;

certainly not more so than the support afforded by voluntary contribution, flowing from a sense of moral and religious duty.

With these views of the cause—of the facts before us—and of the Statute of 1811, *c. 6.* we are all of opinion that the plaintiff is legally entitled to the exemption which he claims; and therefore there must be

*Judgment on the verdict.*